CARMELO BERRÍOS RIVERA, peticionario, *v.* LA CORTE DE DISTRITO DE SAN JUAN, HON. PABLO BERGA, JUEZ, demandada.

No. 756.—*Sometido:* Abril 20, 1931. *Resuelto:* Abril 28, 1931.

*V. Polanco de Jesús,* abogado del peticionario; *Attorney General James R. Beverley* y *A. Ortiz Toro, primer sub-procurador general auxiliar,* por la Comisión Industrial, interventora.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este es un recurso de *certiorari* interpuesto por un obrero que obtuvo una resolución de la Comisión Industrial de Puerto Rico, ordenando al asegurador "Fondo del Estado" que le pagara una indemnización de $900 dentro de quince días contados a partir de la notificación de dicha resolución. Se libró la orden de pago en diciembre de 1929. En diciembre la recibió el Tesorero de Puerto Rico. Nada hizo por espacio de un año y entonces el obrero pidió a la Corte de Distrito de San Juan que dictara un auto de *mandamus* ordenándole el pago. Una orden para mostrar causa fué expedida. Alegó el Tesorero que la petición no aducía hechos suficientes para determinar una causa de acción y contestó estableciendo varias defensas especiales. Llamado el caso para la vista de la excepción, el peticionario pidió a la corte que dictara sentencia sobre las alegaciones. Rehusó hacerlo

la corte por estimar que los hechos esenciales de la demanda habían sido negados en la contestación y procedió a declarar con lugar la excepción previa, así:

"En la resolución de la Comisión Industrial de Puerto Rico, que se transcribe en el hecho II de la demanda, se dice que el asegurador es el Fondo del Estado, y se ordena notificar al obrero, al patrono, al *Auditor* y al *Tesorero de Puerto Rico;* alegándose además en el hecho III que en cumplimiento de dicha resolución, con fecha 20 de Diciembre de 1929 la Comisión Industrial libró una orden de pago debidamente firmada por su Presidente Juan M. Herrero y su Secretario Joaquín A. Becerril, y dirigida al Tesorero de Puerto Rico, para que procediera al pago de la liquidación del caso a que se refiere la indicada resolución por un montante de $905.57, siendo dicho Tesorero el único autorizado y obligado por ley a verificar dicho pago al recibo de la orden; que ésta fué recibida en el mismo día 20 de Diciembre de 1929 por el Tesorero de Puerto Rico, y que, hasta la fecha, a pesar de haber transcurrido más de un año del recibo de la misma, el Tesorero de Puerto Rico no ha verificado el pago al demandante.

"La Ley de Indemnizaciones por Accidentes del Trabajo, No. 85, de 14 de Mayo 1928, según fué enmendada por Ley No. 40, de 25 de Abril 1929, por su Sección 7 dispone que la Comisión Industrial, en sus funciones puramente administrativas, y el Negociado de Compensaciones a Obreros del Departamento de Hacienda, bajo la dirección y control del Tesorero de Puerto Rico, constituirán el asegurador denominado 'Fondo del Estado,' correspondiendo a la Comisión Industrial hacer la liquidación de los casos de obreros cuyos patronos estén asegurados en el Fondo del Estado, y al Negociado de Indemnizaciones a Obreros, fiscalizar y efectuar todos los desembolsos que de acuerdo con la ley deban hacerse contra el Fondo de Depósito para Indemnizaciones a Obreros.

"No se alega en la solicitud de mandamus con cargo a qué fondos el demandado Manuel V. Domenech, en su carácter de Tesorero de Puerto Rico, deberá pagar la liquidación montante a $905.57, y si el desembolso es con cargo al Fondo del Estado, entonces, como la ley le concede el derecho de fiscalización, por estar bajo su dirección y control el Negociado de Compensaciones a Obreros, era necesario alegar además un abuso de discreción."

Fué entonces que el obrero radicó en esta Corte Suprema

su solicitud de *certiorari*. El auto fué expedido y todos los antecedentes del caso se encuentran ante nosotros.

 El asunto es complicado tanto en cuanto a los hechos envueltos, como en cuanto a la interpretación de la ley que lo regula.

El estatuto creador de la Comisión Industrial—Ley No. 85 de 1928—fué enmendado en 1929. Su sección 7, tal como quedó enmendada, en lo pertinente, dice:

"La Comisión Industrial tendrá funciones de naturaleza cuasi judicial en lo que respecta a la resolución de todos los casos de accidentes cubiertos por esta Ley, y tendrá además funciones de naturaleza. puramente administrativa en lo que respecta a la prestación de servicios médicos y a la liquidación de los casos de obreros cuyos patronos estén asegurados en el Fondo del Estado. La Comisión Industrial, en sus funciones puramente administrativas, y el Negociado de Compensaciones a Obreros a que se refiere el apartado (c) de esta sección, constituirá el asegurador denominado Fondo del Estado con carácter competitivo dentro de la libre concurrencia que por esta Ley se autoriza. En sus funciones cuasi judiciales la Comisión Industrial representará únicamente el interés público.

"(c) Un Negociado de Compensaciones a Obreros que por la presente se crea en el Departamento de Hacienda bajo la jurisdicción del Tesorero de Puerto Rico con carácter competitivo. Dicho negociado, bajo la dirección y control del Tesorero de Puerto Rico, asegurará, de acuerdo con la ley y los reglamentos vigentes, a todos los patronos que opten por el seguro del Estado y a los que por ley deben asegurarse con el Estado; y fiscalizará y efectuará todos los desembolsos que de acuerdo con la ley deben hacerse contra el Fondo de Depósito para Indemnizaciones a Obreros." Leyes de 1929, página 225.

Se observa, pues, que la comisión tiene facultades cuasi judiciales y administrativas, y que, además, en lo que se refiere al apartado (c), constituye el organismo asegurador que se conoce como Fondo del Estado. Veamos la resolución dictada por la Comisión Industrial en este caso. En lo pertinente, dice:

"Gobierno de Puerto Rico.—Departamento de Agricultura y

Trabajo.—En la Comisión Industrial de Puerto Rico.—Peticiona-
rio.—Carmelo Berríos Rivera.—Patrono.—Municipio de Morovis.—
Asegurador.—Fondo del Estado.—No. 20704. . . . . Resolución.
Habiéndose examinado cuidadosamente el expediente de este caso;
encontrándose que todos los datos, hechos y circunstancias, tal como
arriba se anota o se relatan son ciertos; encontrándose, por lo
tanto, que se trata en el presente de uno de los casos de Incapaci-
dad Parcial Permanente que protege nuestra Ley; teniendo en
cuenta el grado de incapacidad que sufre el obrero, el jornal que
ganaba el día del accidente y sus probabilidades de vida; deduci-
das por su edad—la Comisión Industrial, de acuerdo con la auto-
ridad concedídale por ley, ahora resuelve que se pague a este obrero,
en adición a las compensaciones semanales a que tuviera derecho,
una indemnización que fijamos en la cantidad de $900.00—. . . . .''

Hablando por sí misma la resolución expresa que la comi-
sión actuó en el ejercicio de sus facultades cuasi judiciales
cuando examinó el expediente y decidió que se pagara al
obrero la indemnización de $900. En cuanto a los servicios
médicos que la comisión hubiera podido ordenar que se pres-
taran al obrero y a la liquidación de cuentas similares, las
facultades de la comisión se desarrollaban en el campo admi-
nistrativo, en el que actúa asociada al Negociado de Com-
pensaciones a Obreros, formando con él, como se ha dicho,
el Fondo del Estado.

Hemos estudiado tanto el memorándum del demandado en
la corte de distrito—caso de *mandamus*—como su alegato en
el recurso de *certiorari,* y como se trata de leyes nuevas y
como el último alegato revela con absoluta claridad la posi-
ción del Tesorero, especialmente la del Superintendente de
Seguros, parece conveniente transcribir del mismo lo que
sigue:

''Entendemos que la demanda no aduce hechos, porque una re-
solución de la Comisión Industrial no puede coartar, ni limitar, ni
constituir en ministeriales las facultades discrecionales del Teso-
rero. Veamos cuáles son esas facultades del Tesorero. De la Sec-
ción 25 de la Ley No. 85, de 1928, aparece que la Comisión Indus-
trial no tiene poder para ordenar al Tesorero a hacer absolutamente

nada. Sus poderes se limitan *a determinar* una cuantía y *a certificar* una decisión.

"En cambio, el Tesorero de Puerto Rico tiene funciones fiscales que cumplir. Si este Hon. Tribunal examina la Ley No. 40 de 1929, observará que bajo el apartado 'C' del Art. 7, el Negociado de Compensaciones a Obreros está bajo la dirección y control del Tesorero de Puerto Rico y está facultado y obligado a fiscalizar todos los desembolsos que, de acuerdo con la ley, deban hacerse contra el Fondo de Depósito para Indemnizaciones a Obreros. . . . .

"Entendemos también que debe considerarse el hecho de que una decisión de la Comisión Industrial no puede ponerse en vigor por el Tesorero de Puerto Rico, sin la acción previa del Superintendente de Seguros. De acuerdo con el Art. 24 de la Ley No. 85, de 1928, el Superintendente de Seguros estará obligado a ejecutar las decisiones de la Comisión en cuatro casos. De acuerdo con este artículo el que tiene la jurisdicción última (ultimate jurisdiction) es precisamente el Superintendente de Seguros. Que esto es así lo sostiene, en un estudio que de nuestra Ley de Indemnizaciones de 1928 hizo, el abogado Robertson Jones, del 'Workmen Compensation Publicity Bureau,' que es un organismo que se ha especializado en indemnizaciones a obreros y tiene estudiados todos los estatutos de indemnizaciones a Obreros de los Estados Unidos continentales y de sus territorios.

"Sostiene la contraria, en el párrafo cuarto de su petición de certiorari, que la Comisión Industrial tiene funciones cuasi judiciales y que si no se apela la resolución, de acuerdo con la Sección 15 de la Ley, ante una corte de distrito, es contrario a todo derecho permitir que un tercero, el Superintendente de Seguros, anule o rescinda una resolución de la Comisión Industrial. La conclusión a que llega la contraria es errónea, porque parte de una base falsa. Nosotros no hemos tratado de obtener la revisión de la resolución de la Comisión Industrial. Por eso no nos acogimos a lo que dispone la Sección 15 de la Ley No. 85. La razón salta a la vista: es sencillamente que nosotros, o sea el gobierno, no era asegurador en este caso. Partimos de la hipótesis de que no existía el status patronal, o sea que no existía la relación de obrero y patrono, dentro de lo que dispone la Sección 2 de la Ley No. 85, de 1928. Y esto aparece de la propia demanda, según demostraremos luego. Así, pues, los hechos hubieran sido muy distintos si habiendo existido un accidente del trabajo, que es precisamente lo que no hubo en este caso, el Superintendente hubiera entendido que la cantidad concedida al obrero era excesiva; no porque fuese funda-

mentalmente ilegal, sino porque la prueba no justificase su concesión. . . . .

"Ya hemos demostrado, nos parece, que de acuerdo con el Art. 24, según fué interpretado por Robertson Jones, el Superintendente es el que tiene la última jurisdicción y que, de acuerdo con dicho artículo, en los cuatro casos en que procede la ejecución de la decisión, debe existir, como condición precedente, necesariamente, la relación de patrono y obrero.

"Es verdad que el Art. 36 de la Ley No. 85, de 1928, obliga al Superintendente de Seguros a embargar bienes de cualquier patrono que dejare de cumplir la obligación de asegurar a sus obreros, para cubrir el importe de cualquier indemnización que pudiere decretarse por la Comisión. Pero queda sobreentendido, y esto es una cuestión fundamental, que el Superintendente de Seguros no está obligado a verificar ningún embargo cuando la Comisión Industrial se extralimita en sus facultades y sus actos son *ultra vires*. . . . .

"Independientemente del argumento fundamental en un procedimiento de mandamus de que la obligación de llevar a cabo el recurrido un acto debe ser ministerial, y como en este caso es discrecional, no imputándose abuso de discreción, tenemos que aunque en cuanto a estos extremos adujese hechos la petición, lo cierto es que no expresa hechos justificativos de la expedición de mandamus, porque según aparece de la petición original de la Corte de Distrito, el accidente ocurrió cuando el lesionado 'se encontraba buscando el acta de inscripción de nacimiento de Rafael Cordero y al tomar el tomo que buscaba se vino sobre el libro, otro que estaba encima, y le cayó en un pie.' Es fundamental que dentro de las funciones de alcaide de cárcel no puede estar nunca la de buscar libros del Registro Civil. Pero suponiendo que además de alcaide de cárcel fuese el peticionario encargado del Registro Civil, entonces el accidente no es de tal naturaleza que sea compensable. La Ley No. 85, de 1928, en su Sección 2da., establece que las disposiciones generales de la ley serán aplicables a accidentes que provengan de cualquier otro acto o función inherente al trabajo o empleo de obrero y que ocurra en el curso de éstos y como consecuencia de los mismos. Dice, además que en cuanto a los obreros y empleados que presten sus servicios al Gobierno, en cualquiera de sus departamentos o dependencias, excepto como *oficinistas* o *clerks*, estarán comprendidos dentro de la ley. La función de buscar libros en el Registro de la Propiedad no es inherente al trabajo de alcaide. Si fuesen inherentes las actividades del peticionario a buscar libros en el Registro Civil, entonces estaría actuando como oficinista o *clerk* y, por con-

siguiente, un accidente que ocurra bajo esa circunstancia no da derecho a una indemnización. Será un accidente, pero no es un accidente cubierto por la Ley No. 85 de 1928, tal cual fué enmendada por la No. 40, de 1929.''

Basta leer lo que antecede para concluir que si se aceptara en su integridad el criterio expuesto, quedaría convertido el Superintendente de Seguros no en un funcionario fiscalizador sino en un árbitro absoluto de los hechos y la ley, por encima de la comisión y prescindiendo de los tribunales de justicia, y todo ello sin siquiera oír a la parte interesada. Esto es, que dictada una resolución por la comisión en el ejercicio de sus facultades cuasi judiciales y firme por no haber sido apelada, el Superintendente por sí mismo, sin oír a la parte a cuyo favor se dictó la resolución, podría dejarla sin efecto, o prescindir de ella, o declararla nula e ineficaz porque a su juicio la comisión apreció mal los hechos y aplicó indebidamente la ley. Esas no son facultades fiscalizadoras, sino judiciales. Y ni là ley dice que eso pueda hacerse, ni puede concebirse que ése fuera el propósito de la Legislatura.

La sección 15 de la ley establece que cualquier parte interesada puede interponer recurso de revisión de cualquier decisión de la Comisión Industrial, para ante la corte de distrito del distrito en que ocurrió el accidente, y el párrafo final de la sección 24 dispone que

''Todos los recursos concedidos por esta Ley a los patronos podrán ejercitarse a nombre de ellos por sus aseguradores, incluso por el Superintendente de Seguros cuando el patrono estuviere asegurado en el fondo del seguro del Estado.''

Eso es lo que debió hacer aquí el Superintendente, pedir dentro del término de diez días que fija la citada sección 15 a partir de la debida notificación, a la corte de distrito correspondiente, que revisara la resolución dictada a favor del obrero por la comisión, si es que entendía que los hechos no fueron bien apreciados y la ley fué aplicada erróneamente,

y no convertirse él mismo, como se convirtió, en tribunal de justicia, y revisar la resolución anulándola o prescindiendo de ella como algo que no tenía valor alguno.

No actuó dentro de la ley y la resolución quedó firme y es obligatoria y final, según las propias palabras del estatuto, secciones 19 y 12, debiendo procederse a su ejecución tal como prescriben las secciones 24, 25 y 41.

. . À virtud de todo lo expuesto se concluye que la petición archivada en la corte de distrito presentaba un caso propio para la expedición de un auto de *mandamus*. Siendo ello así, deberíamos devolver el caso ordenando la expedición de un auto perentorio. Sin embargo, atendidas las circunstancias concurrentes y a fin de que todo se dilucide y sirva este caso como norma para adoptar la regla a seguir en el futuro, se ordena la expedición de un auto condicional dando así una oportunidad al Tesorero de exponer cualquier razón justa que pueda tener en contrario, que no sea incompatible con la interpretación que hemos dado a la ley.

El Juez Asociado Señor Wolf no intervino.